IAN R. DATTNER (NY BAR NO. 4411187) (dattneri@sec.gov)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20549
Telephone:  (202) 551-4763 (Dattner)
Facsimile:  (202) 772-9240 (Dattner)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>      v.<br><br>GENE  SHEN,<br><br>          Defendant. | No. __:____-_____ (    ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendant Gene Shen ("Shen"), and alleges as follows:

### SUMMARY

1.      This case involves insider trading by Shen, a former Principal Scientist at Pacific Biosciences of California, Inc. ("Pacific Biosciences" or the "Company"), a developer and manufacturer of genetic sequencing technology.  In 2013, Pacific Biosciences entered into an agreement where F. Hoffman La Roche ("Roche") would make significant payments to Pacific Biosciences upon the achievement of each of three milestones toward the development and launch of a new genetic sequencing platform.  Shen used his employer's confidential information about progress toward the milestones to purchase shares in advance of three

positive announcements by the Company on August 28, 2014, May 5, 2015 and September 30, 2015. The first two announcements disclosed the Company's achievement of the first two development milestones, each of which resulted in the Company receiving $10 million from Roche. The third announcement disclosed the Company's new product launch and anticipated achievement of the third milestone and receipt of $20 million from Roche.

2.      Shen, a Principal Scientist in Pacific Biosciences' research and development group, had access to material nonpublic information through his work on new product development and information he received from other employees detailing the Company's progress towards meeting milestones and developing the new genetic sequencing technology.

3.      All of Shen's purchases of shares described in this Complaint took place during blackout periods under Pacific Biosciences' Insider Trading Policy, when Shen was expressly prohibited from trading in Pacific Biosciences stock. Shen also made all of the trades in accounts in which he was not permitted to trade under the Company's Insider Trading Policy.

4.      Shen owed duties of trust and confidence to Pacific Biosciences, which explicitly prohibited him from trading on the basis of material nonpublic information and from disclosing that information to others. Despite these clear duties, Shen knowingly or recklessly purchased shares on the basis of Pacific Biosciences' material nonpublic information and also shared that information with a relative with the expectation that she would trade on the basis of it.

5.      As a result of his illegal trading, Shen obtained more than $40,000 in profits, and his relative obtained $1,360 in profits.

6.      By virtue of the conduct alleged in this Complaint, Shen engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Unless Shen is permanently restrained and enjoined, he will in the future engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.    The Commission brings this action under the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks to permanently enjoin Shen from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and seeks an order requiring Shen to disgorge all ill-gotten gains from the unlawful insider trading activity as set forth in this Complaint, along with prejudgment interest. The Commission also brings this action, pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l], for civil penalties against Shen.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action pursuant to Sections 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u-l & 78aa].

9.    Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts and transactions constituting the violation alleged in this Complaint occurred within the Northern District of California and Shen resides and transacts business in the District. Among other things, Shen executed his illegal insider trades from within this District, and Pacific Biosciences employed Shen at its headquarters in this District.

## INTRADISTRICT ASSIGNMENT

10.    Assignment to the San Jose Division is appropriate pursuant to Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions giving rise to the Commission's claims occurred in the County of Santa Clara.

## DEFENDANT

11.    Shen, age 61, resides in Santa Clara, California. Shen joined Pacific Biosciences as a Principal Scientist in 2005. Shen worked in the research and development department of Pacific Biosciences until 2017. Shen holds a doctorate in organic chemistry and a Master's of Business Administration.

*SEC v. Shen*
Complaint

**RELEVANT ENTITY**

12.     Pacific Biosciences is a Delaware corporation headquartered in Menlo Park, California, which designs, develops and manufactures genetic sequencing technology.  Its shares became listed on the NASDAQ Stock Market in 2010.

**FACTS**

***Shen's Employment at Pacific Biosciences and Duty of Confidentiality to Pacific Biosciences***

13.     From 2005 through 2017, Shen was a Principal Scientist at Pacific Biosciences, where he worked in the research and development group.  Shen's responsibilities included developing new products and enhancing the Company's existing products.  Shen had access to and routinely learned of material nonpublic information concerning product development.

14.     As an employee of Pacific Biosciences, Shen owed Pacific Biosciences a duty to keep confidential material nonpublic information about the Company's business, including, but not limited to, information concerning product development and contracts with other parties.  Shen also had a duty to refrain from trading on the basis of such information and from tipping the information to others.

15.     Prior to Pacific Biosciences' initial public offering in October 2010, Shen received Pacific Biosciences' Insider Trading Policy.  Shen signed a memorandum at the time acknowledging that he (a) had "received and read the Insider Trading Policy"; (b) had "received satisfactory answers to any questions [he] had regarding the Insider Trading Policy and insider trading in general"; and (c) understood and "agree[d] to comply with the Insider Trading Policy."

16.     The Insider Trading Policy stated that "[e]ach employee of the Company . . . must maintain the confidentiality of the Company's material inside information."  The policy cited examples of "material" information, including:  (a) "Strategic and technological agreements, including collaborations"; (b) "Intellectual property developments"; and (c) "Development of potential product candidates or new applications."

*SEC v. Shen*
Complaint

17.     The Insider Trading Policy required that employees trade Pacific Biosciences stock only through its designated brokerage firm.  The Insider Trading Policy also prohibited employees from trading in blackout periods in advance of the Company's earnings announcements (from two weeks before the end of each quarter until after the Company announced earnings).  Moreover, under the Insider Trading Policy, the Company could declare special blackout periods during which some or all employees would be prohibited from trading in Pacific Biosciences stock.  All of Shen's purchases at issue in this Complaint took place during Company blackout periods and in brokerage accounts in his name or in which he exercised trading authority that were not at the Company's designated brokerage firm—both of which were expressly prohibited under the Company's Insider Trading Policy.

***Pacific Biosciences' Agreement with Roche***

18.     In September 2013, Pacific Biosciences announced that it had entered into an agreement with Roche to develop and manufacture a new genetic sequencing product, where Roche obtained the exclusive rights to distribute the product in the field of *in vitro* diagnostics (the "Development Agreement").  The new product that Pacific Biosciences developed in collaboration with Roche was known as the Sequel System.  Shen was part of the Pacific Biosciences research and development team that developed the new Sequel System.

19.     Under the Development Agreement, Pacific Biosciences received a $35 million upfront payment from Roche and was eligible to receive three additional payments—$10 million, $10 million and $20 million—tied to the achievement of each of three milestones.

20.     The revenues that Pacific Biosciences stood to earn under the Development Agreement were material to Pacific Biosciences' revenues and other financial metrics.

***Shen's Trading Ahead of the First Milestone Announcement***

21.     Shen, who was working on the development of the Sequel System, received a series of confidential emails from late July through August 2014 from a senior director in the Company's research and development group, noting progress towards the Sequel System's

*SEC v. Shen*
Complaint

development. The internal emails warned that they should not be forwarded without permission since they included references to and details of the system's development.

22. On August 25, 2014, Shen received another email from the Company's Chief Financial Officer stating "[i]n consideration of certain progress on our R&D goals and either your direct participation in or access to information relating to those activities, you are subject to a Special Blackout Period as defined in our Insider Trading Policy." The email continued, "[t]he existence of a Special Blackout Period is confidential and by itself may be construed as material non-public information." The first line of the email warned "CONFIDENTIAL – DO NOT FORWARD."

23. The day after Shen received notice of the special blackout period, Shen knowingly or recklessly purchased 5,000 shares of Pacific Biosciences stock on the basis of material nonpublic information about the Company's progress towards the first milestone in breach of his duty to the Company.

24. On August 28, 2014, Pacific Biosciences publicly announced that it had achieved the first milestone under the Development Agreement, which would entitle the Company to receive a $10 million payment from Roche. These revenues represented more than 48% of the Company's third quarter's revenues.

25. Pacific Biosciences' stock price increased following the announcement, and Shen sold the shares he had purchased, obtaining profits of $2,613.

***Shen's Trading Ahead of the Second Milestone Announcement***

26. In April 2015, Shen received confidential work information about progress towards the second milestone. Specifically, on April 6, and April 12, 2015, Shen received weekly summaries from a senior director in the Company's research and development group indicating the progress being made towards developing the new system. Both summaries included warnings that the emails should not be forwarded without permission because they contained information on the Sequel System's development.

*SEC v. Shen*
Complaint

27.     In addition, on April 15, 2015, Shen attended a work presentation concerning the Sequel System. The presentation indicated that the Company expected to achieve the second Roche milestone in the middle of the second quarter of 2015. The presentation also provided detailed results of recent Sequel System testing.

28.     Two days after the work presentation, Shen knowingly or recklessly began purchasing Pacific Biosciences shares on the basis of material nonpublic information about the Company's expected achievement of the second milestone in breach of his duty to the Company. From April 17, 2015 through April 30, 2015, Shen purchased 74,000 shares of Pacific Biosciences stock. Shen made the purchases during a quarterly blackout period when he was prohibited from trading in Company stock.

29.     On May 5, 2015, Pacific Biosciences publicly announced that it had achieved its second milestone under the Development Agreement, meaning that it would receive an additional $10 million from Roche. These revenues represented more than 40% of Pacific Biosciences' revenues in the second quarter of 2015.

30.     Following the May 5 announcement, Pacific Biosciences' stock price increased, and Shen sold shares 57,200 shares of Company stock. Shen had realized and unrealized profits totaling $23,573.

**Shen's Trading and Tipping Ahead of the New Product Launch and Third Milestone Announcement**

31.     From July 2015 through September 2015, Shen received confidential work information about the anticipated timing of the Sequel System product launch and achievement of the third milestone under the Development Agreement. For instance, at a July 7, 2015 work meeting, Shen was informed that the Company intended to launch the Sequel System in the fourth quarter of 2015. After the meeting, Shen received an email from the head of research and development reinforcing the importance of launching the Sequel System in the fourth quarter, along with the steps that needed to be taken to achieve that goal. The email concluded by stating "[f]or obvious reasons, please do not forward this email out of R&D."

*SEC v. Shen*
Complaint

32.     Approximately two weeks later, in advance of a Company-wide meeting at which Shen was presenting on an unrelated topic, Pacific Biosciences' head of investor relations warned Shen and other presenters in an email: "COMPANY MEETING REMINDER – READ ME!!!!". . . "Just a gentle reminder to NOT mention Sequel in any way during the introductions, presentations, reminders or at any point during the company meeting."

33.     Shen continued to receive updates on the Sequel System's progress throughout August and September 2015, indicating that the Company was nearing its goal of launching the new system. For example, on September 2, and 14, 2015, Shen received emails from a senior director in the Company's research and development group indicating progress towards launching the Sequel System. Likewise, a September 23, 2015 email that Shen received from the same senior director noted that certain tasks relating to the system would be going from research and development to manufacturing.

34.     From September 25 through September 30, Shen, in breach of his duty to the Company, knowingly or recklessly purchased 19,800 shares of Pacific Biosciences stock on the basis of material nonpublic information about the expected Sequel System launch and achievement of the third milestone under the Development Agreement. Shen purchased the shares during the Company's quarterly blackout period, when he was prohibited from trading in Company stock.

35.     On September 30, 2015, Pacific Biosciences announced the launch of its new Sequel System and its expected achievement of the third milestone under the Development Agreement. The Company also announced that it expected to receive $20 million from Roche in the fourth quarter of 2015, representing over 55% of revenues in the quarter.

36.     In breach of his duty to Pacific Biosciences, Shen also knowingly or recklessly tipped a relative with whom he had a close relationship to trade in Pacific Biosciences securities. Shen informed the relative, who was not an employee of Pacific Biosciences, that he believed Pacific Biosciences shares were underpriced and it was a good time to purchase shares. Shen conveyed this information with the intention that the relative would trade and would

*SEC v. Shen*
Complaint

1  benefit from the trading.  Following the conversation, Shen's relative purchased 800 shares of

2  Pacific Biosciences stock on September 29, 2015.  The relative had not previously invested in

3  Pacific Biosciences stock.

4       37.     Pacific Biosciences' stock price increased following the September 30, 2015

5  announcement and, on October 1, 2015, Shen sold the shares he had accumulated, obtaining

6  $14,436 in profits.  His relative had unrealized profits of $1,360.

7  <center>**COUNT I — INSIDER TRADING**</center>

8  <center>**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**</center>

9       38.     Paragraphs 1 through 37 are incorporated by reference as if fully set forth

10  herein.

11       39.     By engaging in the conduct alleged above, Shen, in connection with the

12  purchase or sale of securities, by the use of any means or instrumentality of interstate

13  commerce or of the mails, or of any facility of any national securities exchange, directly or

14  indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue

15  statements of material fact or omitted to state material facts necessary in order to make the

16  statements made, in the light of the circumstances under which they were made, not

17  misleading; or (c) engaged in acts, practices or courses of business which operated or

18  would have operated as a fraud or deceit upon persons.

19       40.     By engaging in the conduct alleged above, Shen directly or indirectly violated

20  Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

21  C.F.R. § 240.10b-5].

22  <center>**PRAYER FOR RELIEF**</center>

23       **WHEREFORE,** the Commission respectfully requests that this Court enter a Final

24  Judgment:

25  <center>I.</center>

26       Permanently restraining and enjoining Shen and his respective agents, servants,

27  employees and attorneys and all persons in active concert or participation with them who

<center>- 9 -</center>

1  receive actual notice of the injunction by personal service or otherwise from violating

2  Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule l0b-5 thereunder [17

3  C.F.R. § 240.10b-5];

II.

5       Directing Shen to disgorge, with prejudgment interest, all ill-gotten gains from the

6  conduct alleged in this Complaint, pursuant to Section 21(d)(5) of the Exchange Act [15

7  U.S.C. § 78u(d)(5)];

III.

9       Directing Shen to pay a civil monetary penalty pursuant to Section 21A of the

10  Exchange Act [15 U.S.C. § 78u-1]; and

IV.

12       Granting such other and further relief as this Court may deem just and proper.

Date: 7/10/18

Ian R. Dattner
New York Bar No. 4411187
Division of Enforcement
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Of Counsel:
Lisa Weinstein Deitch
California Bar No. 137492
Division of Enforcement
Securities and Exchange Commission

*SEC v. Shen*
Complaint